CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

NOV 17 2009

JOHN F. CORCORAN, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JOHN EDWARD DAVIS, | ) | Criminal Action No. 7:06-CR-00055 |
| Petitioner, | ) | |
| | ) | **2255 MEMORANDUM OPINION** |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | By: Hon. James C. Turk |
| | ) | Senior United States District Judge |
| Respondent. | ) | |

John Edward Davis, an inmate held at Beckley, West Virginia and proceeding pro se, brings this action as a motion to vacate his conviction pursuant to 28 U.S.C. § 2255. Davis asserts that his rights under the Fourth, Fifth, and Sixth Amendments to the U.S. Constitution were violated because (1) his attorney provided ineffective assistance of counsel such that his guilty plea was not knowing, intelligent, and voluntary, (2) his attorney provided ineffective assistance of counsel by failing to timely file a notice of appeal that he had requested, (3) the United States breached the plea agreement by asking for sentence enhancements, (4) the District Court erred in classifying petitioner as a career offender, and (5) a search warrant executed on July 10, 2006 violated his Fourth Amendment rights, such that all drugs recovered in connection with that search should be suppressed. Respondent filed a motion to dismiss, to which Petitioner Davis responded, making the matter ripe for disposition. Upon review of the parties' arguments and the case record, the Court finds that Davis waived his right to pursue a § 2255 motion and, therefore, the United States' motion to dismiss must be **GRANTED**, and Davis' motion to vacate his sentence under § 2255 must be **DENIED**.

## I. Factual Background and Procedural History

Petitioner was arrested following the execution of a search warrant on July 10, 2006, during which 33.9 grams of cocaine base were seized from his possession. After being advised of the Miranda warning, he waived his Miranda rights and denied that any of the seized drugs belonged to him. Later, during a second interrogation by federal officials, he admitted he had been distributing cocaine base. He was indicted, on July 13, 2006, for possession of more than five grams of cocaine base with the intent to distribute, in violation of 21 U.S.C. § 841. On November 7, 2006, petitioner moved to suppress the fruits of the search and the incriminating statements made in custody. After a hearing on the issue, the motion was denied by the Court on December 5, 2006. Following the denial of the motion to suppress, petitioner decided to change his plea to guilty and entered into a plea agreement with the government. On May 9, 2007, he pled guilty to the one count indictment, and on August 31, 2007, he was sentenced to a term of confinement of 188 months. On September 5, 2008, he filed the instant motion to vacate his sentence.

## II. Standards of Review

### A. Motion for Summary Judgment

The United States' motion to dismiss must be treated as a motion for summary judgment. The United States submitted materials outside of the pleadings, including transcripts, the plea agreement signed by petitioner, and an affidavit from petitioner's former counsel. Davis did not include further exhibits in his opposition brief or any filing.[1] When a motion to dismiss is

---

[1] As demonstrated infra, the court finds that an evidentiary hearing is unnecessary because the claims in the petition can be resolved on the basis of the present record. Rule 8 of the Rules Governing § 2255 Cases in the United States District Courts specifically contemplates that the availability of an evidentiary hearing in a § 2255 petition will be determined by reviewing "the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7." RULES GOVERNING § 2255 PROCEEDINGS, RULE 8(a).

submitted with additional affidavits or documents outside the pleadings, the Court may consider it a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. Pro. 12(d).[2] In reviewing a motion for summary judgment, the court views the facts, and inferences to be drawn from those facts, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Nevertheless, the courts look to the affidavits and other specific facts to determine whether there is a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Moreover, it is the substantive law that will identify which facts are material for the purposes of summary judgment. Id. at 248. Ultimately, summary judgment is only proper where "there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## III. Analysis

### A. No Evidentiary Hearing is Needed on Question of Appeal

Although the Court finds, infra, that Davis has waived his ability to bring this § 2255 claim, there is a preliminary matter as to whether Davis instructed his attorney to file a direct appeal that must be addressed. Persons who are convicted in federal district courts have a right to a direct appeal. Coppedge v. United States, 369 U.S. 438 (1962). An attorney is not automatically required to file an appeal; the attorney must notify the defendant of the right of appeal, but it is the defendant who "must make decisions which may make the difference

---

[2] The parties received reasonable and explicit notice of the court's intention to convert the United States' motion to dismiss into one for summary judgment. The Clerk of the Court issued a Roseboro Notice on November 20, 2008, explaining that "if documents or affidavits outside the pleadings are submitted by either party, any motion(s) to dismiss under Rule 12(b)(6) of the Federal Rules of Federal Civil Procedure may be considered as motion(s) for summary judgment under Rule 56 of the Federal Rules of Federal Civil Procedure." The Clerk of Court issued an additional notice, on July 1, 2009, following the United States' Response to the Petitioner's Amended Motion to Vacate which contained the same warning. (Dkt. Nos. 92, 105).

between freedom and incarceration." Nelson v. Peyton, 415 F.2d 1154, 1157 (4th Cir. 1969), cert. denied, 397 U.S. 1007 (1970). However, if the defendant wishes to appeal, the attorney must comply and "file the requested appeal" or else "deprive the [petitioner] of the assistance of counsel on direct appeal altogether." United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993). The Sixth Amendment obligates an attorney to file such a direct appeal and identify possible issues for the court even if, in the attorney's opinion, those issues are not meritorious. Anders v. California, 386 U.S. 738 (1967). Similarly, Davis would not have to demonstrate to the court that this failure to file the appeal prejudiced him in some way, i.e., he would likely have been successful, because the mere deprivation of the right would entitle him to relief. Rodriguez v. United States, 395 U.S. 327, 329 (1969). If this Court were to find that Davis instructed his attorney to file an appeal, and that his attorney failed to file the appeal, then the Court would be obligated to permit the appeal process to play out before considering the remaining § 2255 issues. If the record fails to demonstrate conclusively that Davis did not wish to appeal, the Court would be obligated to hold an evidentiary hearing on the matter. United States v. Witherspoon, 231 F.3d 923, 927 (4th Cir. 2000).

In the instant case, however, the record clearly demonstrates that Davis' counsel, as well as the court, advised him of his right to appeal and that Davis chose not to appeal. There is no need for an evidentiary hearing to evaluate Davis's claims because the record "conclusively demonstrate[s] that [petitioner] is entitled to no relief." Id. Although Davis claims that he requested that his counsel file an appeal, both an affidavit of his counsel and his own words discredit that claim. First, his counsel swore:

> [I] raised the issue of appeal and advised Mr. Davis that I did not feel that he had issues of merit to appeal (including the suppression issue) but that if he instructed us to note an appeal we were obligated to do so. I also noted that pursuing an appeal might hurt his chances for a sentence reduction as the government likely

4

> would not be inclined to assist someone who was fighting it on appeal. Mr.
> Davis specifically stated that he did not want to note an appeal and was hoping to
> get a sentence reduction based on substantial assistance. At no time during the 10
> day period for noting an appeal did Mr. Davis contact me and request that I note
> an appeal. ...The first mention by Mr. Davis of any appeal was in a letter I
> received on February 29, 2008. <u>Affidavit of Randy Cargill</u>, Par. 2-3.

This version of events is corroborated by the aforementioned letter. Mr. Davis has not disputed the accuracy of the February 29, 2008 letter, nor expressly claimed that his instruction to note an appeal was within either the ten (10) day time limit under Federal Rule of Appellate Procedure 4(b)(1)(A), or the thirty (30) day limit under Federal Rule of Appellate Procedure 4(b)(4). Second, Mr. Davis appears to acknowledge that he had not noted an appeal as of February 29, 2008: "Mr. Cargill I am writing concerning [sic] my PSI and to see if you think I should try and apeal [sic] my suppression hearing and to ask you to send the motion Paul Dull had done before you were assigned to my case." <u>Affidavit of Randy Cargill</u>, Attachment 1. In his letter of May 12, 2008, Mr. Davis appears to acknowledge again that he did not request an appeal: "you promise [sic] me I would get my substantial assistance motion thats [sic] why I took the plea in the first place because you said Mr. Wolthius [the prosecutor] would not help me if I filed for my appeal on my motion to suppress. So I decided to wait on my motion for substantial assistance." <u>Affidavit of Randy Cargill</u>, Attachment 3.

. Although Davis now asserts that he asked his attorney to file an appeal, all of the evidence refutes that assertion. In evaluating Davis's claim under the summary judgment rubric, it is well settled that conclusory assertions are insufficient to present a genuine issue of material fact. <u>Anderson</u>, 477 U.S. at 242; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). Counsel's records are clear and definitive; petitioner's assertions must not be heard to call them into question. <u>Cf.</u> <u>Becton v. Barnett</u>, 920 F.2d 1190, 1195 (4th Cir. 1990) ("Proper records of counsel

might have cleared up this issue; however, none were presented"). The Court concludes that no evidentiary hearing is required and no appeal was timely requested.

### A. Davis Waived Any § 2255 Claims In His Plea Agreement

The plea agreement that Davis signed on May 9, 2007 contained a waiver of the right to collaterally attack the judgment and sentence entered by the Court. "I further agree to waive my right to collaterally attack, pursuant to Title 28, United States Code, Section 2255, the judgment and any part of the sentence imposed upon me by the Court." Plea Agr. Par. 16. Such waivers of collateral attack rights have been upheld by every Circuit Court of Appeals to consider the issue, so long as the waiver is knowing and voluntary. See Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001); United States v. Cockerham, 237 F.3d 1179 (10th Cir. 2001); De Roo v. United States, 223 F.3d 919, 923 (8th Cir. 2000); Watson v. United States, 165 F.3d 486, 489 (6th Cir. 1999); Jones v. United States, 167 F.3d 1142, 1145 (7th Cir. 1999); United States v. Wilkes, 20 F.3d 651, 653 (5th Cir. 1994); United States v. Abarca, 985 F.2d 1012, 1014 (9th Cir. 1993). In this Circuit the rule is the same. "We hold that a criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

To avoid the preclusive effect of the § 2255 waiver in his plea agreement, Davis advances two different arguments. First, Davis specifically alleges that his guilty plea was not knowing and voluntary due to the ineffective assistance of his counsel. In the alternative, Davis asserts that the plea agreement is invalid because the government breached the plea agreement. In neither argument, however, has Davis demonstrated that a genuine issue as to the material facts exists. Moreover, the Court finds that the government is entitled to a judgment as a matter of law with respect to each argument advanced by Davis.

### 1. Davis Entered a Knowing, Voluntary and Intelligent Plea

Davis claims that he received constitutionally ineffective assistance of counsel that invalidates his guilty plea. Davis alleges that "defense counsel Cargill failed to properly explain the contents, language and substance of the plea agreement to include any repercussions or 'waiver' of any rights." Pet. Mot. Pg. 5. Without such an explanation, Davis explains, his entering of the guilty plea was "unknowing, involuntary and unintelligent." Id. Davis is correct that ineffective assistance of counsel *may* provide the basis to invalidate a guilty plea. See United States v. White, 366 F.3d 291, 300 (4th Cir. 2004) (requiring evidentiary hearing on matter). But such "extraordinary circumstances," when found, have included both "a defendant relying on mistaken advice from constitutionally ineffective counsel" and a "Rule 11 colloquy that also fails to negate the erroneous advice provided by the constitutionally ineffective counsel." Id. In this case, however, the petitioner has failed to put forth facts showing a constitutionally ineffective counsel, or calling into question the existence of Rule 11 colloquy that negated the effect of a constitutionally ineffective counsel.

To demonstrate constitutionally ineffective assistance of counsel, petitioner must satisfy the test set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Court held that a finding of ineffective assistance of counsel requires a two-prong showing, and a habeas petitioner bears the burden of persuasion for both prongs. Id. at 687. To satisfy the first prong, a habeas petitioner must show that his counsel's performance "fell below an objective standard of reasonableness," where reasonableness is determined under the "prevailing professional norms." Id. at 688. To satisfy the second Strickland prong, a petitioner must show that prejudice resulted from counsel's deficient performance. Id. at 692. Prejudice is a "reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different." Id. at 694. Failure to satisfy either prong is fatal to a petitioner's claim, so "there is no reason for a court ... to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697. In the context of a guilty plea, the prejudice standard requires that the "defendant show that there is a reasonable probability that, but for the counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Here, the evidence shows that, regardless of whether counsel accurately and effectively described the waiver provisions of the agreement, Davis had comprehensively reviewed the totality of the plea agreement and decided that pleading guilty was the correct strategy.[3] Thus, he cannot establish prejudice. First of all, his attorney "went over the entire agreement with him in detail" and "explained each provision." Affidavit of Randy Cargill, Par. 1. As a result, his attorney was "confident that [Davis] understood the agreement [and] understood the rights he was giving up by pleading guilty...and with knowledge of the consequences of his decision." Id. Mr. Davis represented the same: he and his attorney had "gone over the plea agreement" and he "fel[t] like he underst[oo]d what's in it." Guilty Plea Hrg. Tr. Pg. 16, Lns. 7-12. Most importantly, the evidence shows that he had a very low probability of prevailing at trial - he admitted in open court that he possessed with the intent to distribute the cocaine base found on his person. See Guilty Plea Hrg. Tr. Pg. 14, Lns. 3-21. It appears that essence of Davis' trial strategy, as such, had been to preliminarily contest, via a suppression hearing, the admissibility of the drugs.[4] But after his failure to suppress the incriminating evidence, Davis modified his

---

[3] This alleviates any necessity for an evidentiary hearing as to whether the counsel did describe the waiver provisions, and makes this issue non-material for the purposes of summary judgment.

[4] After his attempts to suppress the drugs failed, he did seek to preserve the right to appeal in his plea agreement, to which the government acquiesced. See Plea Agr. Par. 9.

strategy: change his plea to guilty, cooperate with the government, and earn a substantial assistance motion. See Sent. Hrg. Tr. Pg. 3, Ln. 25 – Pg. 4, Ln. 13. The substantial assistance motion is, accordingly, a substantial part of the plea agreement. See Plea Agr. Par. 21. There is nothing in the record to suggest that a more effective explanation of the waiver provisions would have changed this otherwise sensible strategy. Not every "plea of guilty needs to be perfectly informed in order to be voluntary." Evans v. Meyer, 742 F. 2d 371, 375 (7th Cir. 1984). Indeed, the essence of a valid guilty plea is that it represents "a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). Here the alleged misfeasance of his attorney extends, even according to Davis, only to the explanation of the availability of future appeals, not to alternative courses of action open to the defendant at that moment. The Court concludes that Davis has failed to demonstrate that, "but for the counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. Consequently, he has not established "prejudice" sufficient to meet the Strickland test for a constitutionally ineffective assistance of counsel claim.

Even had the Court concluded that his counsel had been constitutionally ineffective, a properly comprehensive and searching Rule 11 colloquy would have alleviated the effect of his counsel's ineffective assistance. See White, 366 F.3d at 300. Here the uncontested record shows that the Rule 11 colloquy effectively addressed any additional complaints that Davis might raise. When questioned at the Guilty Plea hearing, Davis represented to the Court that he understood all the consequences of pleading guilty. "THE COURT: Now Mr. Davis, understanding…the rights you give up when you plead guilty, the minimum and maximum sentence for this offense, the fact that it's subject to the sentencing guidelines, the consequences of pleading guilty…do you still want to plead guilty here this morning? THE DEFENDANT: Yes, sir." Guilty Plea

Hrg. Tr. Pg. 13, Ln. 18 – Pg. 14, Ln. 1. The Court proceeded to directly question Davis as to the particulars of the guilty plea including, specifically, his rights to appeal certain aspects of the proceedings. First, the Court explained that the guilty plea "in no way affects your right to appeal your motion to suppress certain evidence." Guilty Plea Hrg. Tr. Pg. 17, Lns. 8-9. Next, the Court explained that the guilty plea *would* impair his other rights to appeal, specifically "waiving your right to appeal any sentencing guideline issues" and "waiving your right to collaterally attack your judgment by way of habeas corpus proceedings." Guilty Plea Hrg. Tr. Pg. 17, Lns. 18-20. The Court confirmed that this was what Davis understood the plea agreement to contain. "THE COURT: Is this basically what you understand the plea agreement to be? THE DEFENDANT: Yes, sir." Guilty Plea Hrg. Tr. Pg. 18, Lns. 9-11. This is consistent with the opinion of his attorney: "I had no doubt that he understood the agreement and that his assurances to the court during the Rule 11 inquiry were voluntarily and intelligently made." Affidavit of Randy Cargill, Par. 1.

During a properly conducted Rule 11 plea colloquy, "a defendant's solemn declarations in open court affirming [a plea] agreement carry a strong presumption of verity" and accordingly present a "formidable barrier in any subsequent collateral proceedings." White, 366 F.3d at 295-96. In White, however, the Court of Appeals determined that it would be "perverse to allow White's affirmations during these proceedings to serve as an insurmountable barrier to his claims" when it had already been demonstrated that "colloquy failed to achieve one of [its] primary purposes." Id. at 298. But contrary to White, here the colloquy was not deficient. It follows that the defendant's affirmations of understanding when the Court specifically outlined which right of appeal was preserved and which rights of appeal and collateral attacks were waived should be presumed valid. Moreover, many Circuit Courts of Appeal have routinely

found that uncorroborated allegations contrary to the plea colloquy will not classify as "extraordinary circumstances" as outlined in White. See Lemaster, 403 F.3d at 223 (allegations directly contradicting solemn declarations in open court do not require an evidentiary hearing and are considered "palpably incredible and patently frivolous or false"); Crawford v. United States, 519 F.2d 347, 350 (4th Cir. 1975) (same); Lasiter v. Thomas, 89 F.3d 699, 702-03 (10th Cir. 1996) (same); Ouellette v. United States, 862 F.2d 371, 377-78 (1st Cir. 1988) (same). In this case, the colloquy remedied any failures of Davis' counsel. Assertions to the contrary now advanced by Davis are unconvincing, if not "palpably incredible and patently frivolous or false." Lemaster, 403 F.3d at 222.

It follows, therefore, that the guilty plea entered by Davis was neither involuntary, unknowing nor unintelligent. He did not suffer from ineffective assistance of counsel, and if he had, the Court's Rule 11 colloquy would have remedied any deficiency. Thus, his plea must be considered valid, and this § 2255 motion waived.

**2. The Government Did Not Breach the Plea Agreement**

Davis also alleges that the government breached the plea agreement by not withdrawing "the notice of enhancement and/or enhanced sentence." Pet. Mot. (Dkt. #81) Pg. 7. Petitioner asserts that his classification as a career offender was an "enhancement" or "enhanced sentence" which breached the plea agreement. Davis argues that "a guilty plea can only be said to be voluntary when the bargain represented by the agreement is not frustrated." Pet. Resp. (Dkt. #104) Pg. 3. See United States v. Jureidini, 846 F.2d 964, 965 (4th Cir. 1988) ("To ensure the voluntariness and validity of the appellant's plea, the court has a duty to ensure that the bargain represented by the plea agreement is not frustrated"). The Court finds Davis' arguments to be unconvincing. First, the Court does not agree that the government's breach of a plea agreement

necessarily invalidates the voluntariness and validity of the plea agreement. Secondly, the Court does not believe that the classification of Davis as a career offender was an enhanced sentence that breached or otherwise vitiated the plea agreement.

Defendant is certainly correct that a breach of the plea agreement would be a violation of his rights, and, understandably, a cause for great concern. See Santobello v. New York, 404 U.S. 257 (1971). But the Court disagrees that the breach of a plea agreement means that the plea agreement was not knowing and voluntary. A plea agreement is a contract, and the starting point for an analysis of the breach of a plea agreement is contract law. United States v. Ringling, 988 F.2d 504, 506 (4th Cir. 1993). Under contract law analysis, when a contract is breached "we do not say that the voluntary bilateral consent to the contract never existed, so that it is automatically and utterly void; we say that the contract was broken." Puckett v. United States, 129 S.Ct. 1423, 1430 (2009). It is true that, in certain instances, the analysis of a plea agreement must be conducted "at a more stringent level than a commercial contract because the rights involved are generally fundamental and constitutionally based." Ringling, 988 F.2d at 506. In this case, however, the same contractual analysis applies to guilty pleas. "There is nothing to support the proposition that the Government's breach of a plea agreement retroactively causes the defendant's agreement to have been unknowing or involuntary." Puckett, 129 S.Ct. at 1430. Accordingly, even if the government were found to have breached the plea agreement in this case, binding precedent establishes that Davis' guilty plea would not be considered to be unknowing or involuntary, his guilty plea would not be invalidated, and Davis would still have waived his right to make this § 2255 collateral attack.[5]

---

[5] This is not to say that Davis would be without recourse for a breach of the plea agreemeent. "If [the government's] obligations are not met, the defendant is entitled to seek a remedy, which might in some cases be a rescission of the agreement, allowing him to take back the consideration he has furnished, i.e., to withdraw his plea."

12

Although the Court could find that Davis' waiver is valid on this basis alone, the Court believes that Davis would be unsuccessful seeking any remedy because he has not identified any breach of the plea agreement by the government. Davis asserts that the government breached the plea agreement by characterizing him as a career offender. The plea agreement sets forth that the government will "not seek any additional sentencing enhancements pursuant to the U.S.S.G." Plea Agr. Par. 4. But it also establishes that "because of [his] prior criminal record [Davis] may be treated as a "Career Offender" under Guideline Section 4B1.1... [and] if found to be a career offender, [Davis] will not be allowed to withdraw [his] plea." Id., at Par. 8. Although Davis claims that the imposition of career offender status in Paragraph 8 is a sentencing enhancement forbidden under Paragraph 4, the Court does not agree with this analysis.

The language of the plea agreement clearly expresses the understandings of the parties that Davis may be treated as a "Career Offender." Plea Agr. Par. 8. The earlier paragraph that Davis identifies merely explains that the government will not seek "any additional sentencing enhancements." Plea Agr. Par. 4. It does not say that the government will not seek "any" sentencing enhancements at all. This is consistent with Paragraph 6 of the Plea Agreement which specifies that the "base offense will neither be enhanced or decreased based upon my role in the offense based on Sections 3B1.1 and 3B1.2...[but] does not affect possible role increases based on Sections 3B1.3 through 3B1.5." Had the government sought an enhanced penalty based on Sections 3B1.3, Davis would certainly not be heard to argue that the prohibition on "any additional sentencing enhancements" forbids this expressly preserved possibility. The

---

Puckett, 129 S.Ct. at 1430. Other cases have suggested that remanding for a resentencing is appropriate. See Ringling, 988 F.2d 504; Santobello, 404 U.S. 257. Others suggest specific performance. See Davis v. United States, 649 F. Supp. 754, 759 (C.D.Ill. 1986). Still others leave discretion to the district court to fashion appropriate relief, given the circumstances. See Jureidini, 846 F.2d at 964; Correale v. United States, 479 F.2d 944 (1st Cir. 1973). In this case, however, the Court believes that the Government has not breached the plea agreement.

career offender status classification was just as expressly noted and preserved in the plea agreement – and Davis cannot be said to have misunderstood the implications of this. "THE COURT: ...the government will not seek any additional sentencing enhancement pursuant to the sentencing guidelines....and because of your prior criminal record you may be treated as a career offender...and if found to be a career offender, you will not be allowed to withdraw the guilty plea...Is this basically what you understand the plea agreement to be? THE DEFENDANT: Yes, sir." Guilty Plea Hrg. Tr. Pg. 16-18. Davis clearly agreed to a plea agreement which exposed him to the potential to be sentenced as a career offender. Accordingly, the plea agreement was not breached when this possibility came to pass and Davis was, in fact, sentenced as a career offender.

## IV. Conclusion

In spite of his assertions to the contrary, the record clearly indicates that Davis decided to not pursue an appeal of his suppression hearing or his sentencing. Thus his only remedy was to collaterally attack his conviction. The plea agreement signed by Davis waived his right to file any collateral attack against that judgment. His § 2255 motion to vacate the sentence is just such an attack and, consequently, has been waived. The Court does not find convincing any of Davis' reasons to vitiate the guilty plea made under this plea agreement. Even evaluated under the standard for summary judgment, Davis has not alleged facts that demonstrate that there is a genuine issue of material facts requiring trial. Moreover, on all of his arguments the government is entitled to a judgment as a matter of law. Counsel for Davis did not provide constitutionally ineffective assistance so as to make his acceptance of the plea unknowing and involuntary. The evidence concerning the Rule 11 colloquy reinforced this Court's conclusion that Davis' plea was neither unknowing nor involuntary. Nor would any alleged breach of the plea agreement

make Davis' plea unknowing or involuntary. In fact, the Court does not believe that the plea agreement has been breached by the government at all.

For the stated reasons, the United States' motions to dismiss (Dkt. Nos. 91 and 104) are **GRANTED** and Davis' 28 U.S.C. § 2255 Motion (Dkt. No. 81) is **DENIED**. An appropriate order shall issue this day.

Davis is advised that he may appeal this decision, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a judge of the United States Court of Appeals for the Fourth Circuit or this court issues a certificate of appealability pursuant to § 2253(c). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). This court finds that Davis has failed to demonstrate such a showing, and thus declines to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322 (2003); Slack v. McDaniel, 529 U.S. 473 (2000). If Davis intends to appeal and seek a certificate of appealability from the Court of Appeals for the Fourth Circuit, his first step is to file a notice of appeal with this court within 60 days of the date of entry of the final order, or within such extended period as the court may grant pursuant to Rule 4(a)(5) of the Federal Rules of Appellate Procedure.

The Clerk is directed to send copies of this memorandum opinion and the accompanying final order to the petitioner and counsel of record for the respondent.

**ENTER:** This 17th day of November, 2009.

*James C. Turk*
Senior United States District Judge